# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAWN N. RABE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:10-cv-0860-WTL-TAB |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ENTRY ON JUDICIAL REVIEW

Pursuant to 42 U.S.C. § 405(g), Plaintiff Dawn N. Rabe seeks judicial review of the final

decision of the Commissioner of the Social Security Administration denying her application for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court rules

as follows.

## I. PROCEDURAL BACKGROUND

Rabe initially applied for DIB on January 9, 2006, alleging that she became disabled on

August 2, 2005, due to anxiety, depression, and syncope. Her application was initially denied on

June 21, 2006, and upon reconsideration on November 22, 2006. She then requested a hearing

before an Administrative Law Judge ("ALJ"). On December 13, 2008, a hearing was held

before ALJ Velasquez but was continued to March 12, 2009, due to Rabe's medical emergency.

On both occasions, Rabe was represented by counsel; however, her application was eventually

denied. The Appeals Council denied her request for review on May 10, 2010, and Rabe filed

this timely appeal.

## II. MEDICAL HISTORY

Rabe alleges she is disabled due to anxiety, depression, and syncope or pseudo-seizures. She was seen by Dr. Unison in April 2005 for her anxiety and depression and received a prescription for Wellbutrin. Her first syncopal episode occurred in June 2005 when she passed out at work for approximately fifteen to twenty seconds. During July and August 2005, Dr. Unison put her on a cardiac monitoring system during which she fainted and was dizzy, light headed, and short of breath. Rabe continued to experience syncopal episodes and was admitted to the hospital in August 2005 after experiencing an episode while driving. During her stay, she had one syncopal episode; however, her EEG testing and MRI/MRA of the brain were all normal.

At the end of August 2005, Rabe started to see Dr. Herr, a neurologist, due to her continued syncopal episodes, which were followed by severe headaches. He instructed her not to drive. She continued to see Dr. Herr through the end of 2005, reporting syncopal episodes followed by headaches, nausea, and vomiting. In early 2006, she reported having syncopal episodes every five days and was referred to Dr. Muckway of Comprehensive Neurologic Services. He noted that she continued to experience these episodes; however, after an extensive work up, no clear etiology had been determined. Dr. Prystowsky, Director of the Clinical Electrophysiology Laboratory, ultimately performed an electrocardiogram, an EKG, and a tilt table test; however, nothing revealed the cause of her syncopal episodes.

In May 2006, Rabe saw Dr. Muckway who ordered an MRA of intracranial circulation and an EEG; the results continued to show an unclear etiology for her syncope. She continued to see Dr. Muckway in follow-up appointments through the end of 2006 and tried a variety of medications including Lyrica, anticonvulsants, and Depakote. Dr. Muckway also attempted to

schedule an appointment for Rabe at the Mayo Clinic, but was denied. He referred her to Dr. Salanova at the Indiana University Medical Center in early 2007 who recommended that Rabe participate in an inpatient video EEG to record her episodes. During this five day monitoring, she experienced two syncopal episodes; however, her EEG was normal and showed no epileptic events. Rabe had a head CT scan in August 2007 with normal results and continued to see Dr. Muckway through 2007 in follow-up appointments. She also documented her episodes in a diary from December 2008 through March 2009.

Dr. Khan completed a psychological evaluation in May 2006, describing Rabe as depressed and anxious. He stated that her episodes could be due to an underlying panic disorder. Dr. Feliciano noted in his evaluation for the Social Security Administration that Rabe has a medical history of depression and neurocardiogenic syncope. William Shipley completed a psychiatric review in June 2006, stating that in his opinion, Rabe had no medically determinable impairment. Dr. Unison completed a Residual Functional Capacity ("RFC") questionnaire, relevant to seizures, in March 2009 and found that Rabe suffered from syncopal spells that occurred one to two times per week or two to three times per month. He reported that each episode lasted anywhere from two to fourteen minutes in length and was followed by exhaustion, confusion, muscle pain, and severe headaches. He noted that she had been compliant with all treatment options and medications, but nothing has helped her frequent syncopal episodes.

### III.  APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least

twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate

in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180,

181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the

relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to

articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific

evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be

affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not

required to address every piece of evidence or testimony," he must "provide some glimpse into

[his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his]

conclusion." *Id.*

## IV. THE ALJ'S DECISION

Applying the five-step analysis, the ALJ found at step one that Rabe had not engaged in

substantial gainful activity since her alleged onset date of August 2, 2005. At step two, the ALJ

determined that Rabe had the following severe impairments: syncope and anxiety/depression. At

step three, the ALJ determined that Rabe did not have an impairment that met or medically

equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ

then found that Rabe had the RFC to perform:

> lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing
> and walking for 6 of 8 hours and sitting for 6 of 8 hours; with no climbing of
> ropes, ladders, or scaffolds. The claimant's work shall not require crawling
> and/or kneeling. Furthermore, the claimant shall not require work around
> unprotected heights, around dangerous moving machinery, operating a motor
> vehicle or work around open bodies of water or open flames. Finally, the
> claimant must be limited to work that is simple and repetitive in nature.

Record at 23. The ALJ determined at step four that Rabe was capable of performing her past

relevant work as a cashier. The ALJ went on to step five and noted that even if he would have

concluded that Rabe could no longer perform her past relevant work, there were a significant number of jobs which she could perform such as an information clerk and airline security representative.

## V. DISCUSSION

Rabe advances several objections to the ALJ's decision, each of which is addressed, in turn, below.

### A. The decision fails to adequately address Rabe's impairments under Listing 11.03

Rabe first argues that the ALJ's decision did not adequately address her impairments under Listing 11.03. Listing 11.03 requires:

> nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

The ALJ found that Rabe did not meet or medically equal Listing 11.03 by stating:

> I have evaluated the syncope condition with more general criteria under Listings 4.00 and 11.00 as it is clear from the evidence that no true etiology for this condition has been determined. However, no evidence through either medical opinion or objective findings characterize these syncopal episode [sic] as epileptic. Moreover, despite alleging a rather severe frequency of syncopal episodes, the two instances in which she sought more immediate medical attention for this condition, the results from a battery of medical tests on her heart, brain, circulatory and nervous systems were all normal (Ex. E at 13; Ex. 1F at 41-43). As such, the claimant when not under the immediate and acute symptoms of these "pseudo-seizures" is able to (and does) carry on relatively normal activity. Moreover, as these "pseudoseizure"/syncope episodes are the only physical condition alleged by the claimant, a full review of all the objective and clinical findings will follow below in the discussion of the claimant's credibility.

Record at 22.

Rabe argues that she medically equals Listing 11.03 in that she experiences her syncopal episodes as frequently as every four days, has been following her treatment plan since June 2005, and experiences loss or alteration of consciousness during each episode. The Defendant points to the Disability Determination and Transmittal Forms (the "Forms") in the Record as evidence that Rabe's condition did not meet or medically equal a listed impairment and states that Rabe's argument should be rejected in light of this evidence.

The Defendant is correct that an ALJ may rely on a physician's opinion of medical equivalence as documented in the Forms. *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990). Moreover, Social Security Ruling ("SSR") 83-19 states:

> At the hearing level, the ALJ is responsible for deciding the ultimate legal question of whether the listing is met or equaled. As trier of the facts, the ALJ is not *bound* by the medical judgment of a "designated" physician regarding medical equivalency. However, the judgment of a "designated" physician on this issue on the same evidence before the ALJ must be received into the record as expert opinion evidence and given appropriate weight.

SSR 83-19, 1983 WL 31248 at *3 (1983). Nevertheless, the Court agrees with the Plaintiff that "the ALJ simply assumed the absence of equivalency without any relevant discussion." *Barnett v. Barnhart*, 381 F.3d 664, 671 (7th Cir. 2004).

Nowhere in the ALJ's short discussion of the listed impairments does he reference the Forms completed by the state agency doctors. Further, the only medical evidence he points to in support of his opinion is the test results indicating that Rabe's condition still has an unknown etiology. There is no discussion of the frequency, symptoms, or treatment of her syncopal episodes nor of the hundreds of pages of medical evidence documenting Rabe's condition. The Court finds that the ALJ did not thoroughly explain his step three decision that Rabe's condition

did not medically equal Listing 11.03 nor did he "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). As such, this case is remanded in order for the ALJ to consider all relevant evidence and thoroughly explain whether Rabe's condition medically equals Listing 11.03.

## B. The ALJ erroneously ignored SSR 96-7p when stating that Rabe failed to receive typical treatment

Rabe's next argument concerns the ALJ's statement that she "has not generally received the type of medical treatment one would expect for a totally disabled individual." Record at 26. She argues that the ALJ ignored SSR 96-7p which states that:

> the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7 (July 2, 1996).

In making the above statement, the ALJ cited twelve pages of the Record and concluded that on numerous occasions, Rabe did not specify any particular complaint. He found this to be inconsistent with her complaint of ongoing symptoms. He further stated that Rabe only sought medical care two times for the injuries she incurred from fainting, which he again believed was inconsistent with her claims of "severe and sometimes dramatic" injuries resulting from her fainting episodes. Record at 25.

The twelve pages the ALJ cites in support of his conclusion reference visits to a primary

care physician where Rabe "received a flu vaccination, had an acute bout of bronchitis, received a B-12 injection, [and] complained of urinary incontinence." Pl.'s Brief at 20. The Court agrees that the ALJ seemed to ignore the rest of the record that documents her ongoing fainting episodes, fatigue, headaches, and dizziness. While the ALJ is not required to evaluate each piece of medical evidence, his decision does need to be based on a review of all relevant evidence. *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985).

Further, the fact that Rabe visited doctors for reasons other than her alleged disability does not mean that her condition was not ongoing. Nor does the fact that she only sought medical treatment two times for injuries  mean that she doesn't sustain injuries from her condition. Rabe herself admits that she does not visit the doctor each time she faints or sustains an injury from fainting because she knows her condition is unchanged and the visits are expensive.

The Defendant argues that in stating Rabe did not receive typical treatment "the ALJ was making a broader statement about her treatment," and that this was only one factor among many the ALJ considered in evaluating Rabe's credibility. Def.'s Brief at 9. While this may be true, this Court has no way of deciphering how much of an effect this factor had in the ALJ's final determination that Rabe was not credible. As such, on remand the ALJ needs to consider all of the relevant evidence of Rabe's treatment and consider why Rabe might not have received the "typical treatment."

### C. The ALJ failed to adequately analyze and consider Rabe's headaches

Finally, Rabe argues that the ALJ did not discuss how her chronic migraine headaches might affect her ability to maintain employment. She argues that chronic headaches can be a

debilitating condition that lead to poor employee performance and absenteeism. The Court notes first that the migraine headaches Rabe refers to are not a separate condition, but rather are a result of her syncopal episodes. Moreover, there is plenty of medical evidence in the record documenting the migraine headaches that occur in conjunction with her syncopal episodes.

The Defendant states that the issue is not whether or not the headaches exist, but rather if they are severe enough to prevent Rabe from working. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004). The Defendant argues that Rabe does not provide any evidence that her migraine headaches cause any greater limitations than what the ALJ found in her RFC assessment. The Defendant is correct that in determining a claimant's RFC the ALJ looks at the severity of the symptoms and how they might affect his or her ability to work, however, the Court does not agree that Rabe "identifies no functional limitations caused by her alleged headaches." Def.'s Brief at 10. Throughout the record, Rabe reports migraine headaches as a result of her syncopal episodes. Indeed, Dr. Unison, in his Seizures Residual Functional Capacity Questionnaire, stated that these severe headaches can last up to two days. Rabe further documents in her pain diary that when she gets migraine headaches, she often has to lay down and go to bed for the rest of the day and night.

The RFC assessment does not take into consideration how Rabe's migraine headaches might affect her ability to work. Finding that Rabe can stand, walk, or sit for six out of eight hours in a workday does not account for the evidence indicating that when Rabe experiences a migraine headache, she has to lay down and sleep for the remainder of the day. SSR 96-9p requires that the ALJ consider all relevant evidence when determining a claimant's RFC, and this did not occur in Rabe's case. Accordingly, on remand, the ALJ shall account for Rabe's

migraine headaches when determining her RFC.

## CONCLUSION

For the reasons set forth below, the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Commissioner with instructions to: (1) consider all relevant evidence and thoroughly explain whether Rabe medically equals Listing 11.03.; (2) consider all relevant medical evidence when assessing Rabe's credibility; and (3) account for Rabe's migraine headaches when determining her RFC.

SO ORDERED: 07/15/2011

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
United States Attorney's Office
tom.kieper@usdoj.gov